**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

MARGARET WIEDERSTEIN,

                        Plaintiff,

v.

WAL-MART STORES, INC.,

                        Defendant.

Case No.:  CIV-21-1047-J

**DEFENDANT'S MOTION FOR MEDICAL EXAMINATION OF PLAINTIFF**

Defendant, Wal-Mart Stores East, LP ("Walmart"), pursuant to Fed.R.Civ.P. 35(a), respectfully submits this Motion for Medical Examination of Plaintiff.  Plaintiff filed this litigation against Defendant making claims that she suffered personal injury from a fall on June 7, 2014, at Defendant's retail premises.  Plaintiff also claims that she experienced pain and suffering because of the alleged injury to her left shoulder as a result of this incident. However, Defendant has previously been provided with medical records which indicate that Plaintiff suffered from a pre-existing medical condition related to her cervical spine that caused Plaintiff to experience left shoulder pain.  On September 15, 2014, Plaintiff began physical therapy at Newman Memorial Hospital.  The medical record from that appointment indicated that Plaintiff "recently had a recheck appointment with her orthopedic doctor and c/o pain in her upper arm.  Her doctor told her that the pain is referred from her cervical spine."  (*See* September 15, 2014 physical therapy note from Newman Memorial Hospital attached as Exhibit "1").  Dr. Teske, Plaintiff's treating physician, testified "[t]hat seems like a very logical thing to tell a patient, so I have no doubt I would

1

have." (*See* excerpt of deposition testimony of Dr. Timothy Teske attached as Exhibit "2" at 81:2-3).  Significantly, on December 7, 2010, more than three (3) years before the underlying incident, Plaintiff was seen by Dr. Michael Brown at Oklahoma Spine Sports & Rehabilitation where she complained of increased pain in her posterior cervical spine. During that visit, Plaintiff also complained of numbness in her left arm.  The medical record from that visit provided an impression of cervical radiculopathy and cervical degenerative disc disease.  (*See* December 7, 2010 record from Oklahoma Spine Sports & Rehabilitation attached as Exhibit "3").  Furthermore, one of the medical records potentially attributing the cause of Plaintiff's pain to a pre-existing spinal condition is dated April 24, 2018, more than three and a half (3 ½) years after the underlying incident.  (*See* April 24, 2018 medical record from Northwest Oklahoma Orthopaedic Clinic attached as Exhibit "4").  Plaintiff's medical records reflect a history of cervical spine issues with corresponding complaints of left shoulder pain.

Thus, the extent of Plaintiff's alleged pain and suffering in her left shoulder as a result of the underlying incident is reasonably called into question because of Plaintiff's documented medical history of pain in her left shoulder.  Defendant has provided notice of an IME appointment for Plaintiff in order to develop testimony for trial. For good cause shown, Defendant requests that the Court issue an Order that Plaintiff undergo an independent medical examination by licensed examiner, Dr. Greg Zeiders, D.O., to develop evidence related to Plaintiff's claims of left shoulder injury and pain and suffering.  For further support of this Motion for Medical Examination of Plaintiff, Defendant respectfully directs the Court to the following:

## INTRODUCTION

Plaintiff filed the above-styled litigation against Defendant following an incident on June 7, 2014.  Plaintiff alleges that as a result of the underlying incident she suffered an injury to her left shoulder.  Plaintiff also alleges that she experienced pain and suffering related to her injury to her left shoulder as a result of this incident.  However, Defendant is aware – based on medical records previously provided to Defendant – that Plaintiff had a pre-existing condition related to her cervical spine that caused Plaintiff to experience pain in her left shoulder.  As part of Defendant's defenses in this litigation, Defendant contends that the pre-existing medical condition related to Plaintiff's cervical spine is a potential generator of pain for Plaintiff's alleged pain and suffering associated with her left shoulder.  There are references in Plaintiff's medical records by her treating physician that a pre-existing medical condition concerning her cervical spine may have also been causing her pain in her left shoulder.  Accordingly, any potential generator of pain for Plaintiff's left shoulder is relevant for purposes of this litigation.  The permitted scope of discovery in litigation is clearly set forth in the Federal Rules of Civil Procedure, specifically *Fed.R.Civ.P. 26*, which states that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Federal Rules of Evidence explains that evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Fed.R.Evid. 401*. Because the nature and extent of Plaintiff's alleged injuries and pain and suffering attributable to the June 7, 2014 incident is in controversy, Defendant requests that the Court enter an Order requiring Plaintiff to submit to a physical examination so that Defendant may have a medical examiner independently assess Plaintiff's medical condition, pre-existing medical conditions, and relatedness of Plaintiff's allegations of pain and suffering to the June 7, 2014 incident.

Fed.R.Civ.P. 35(a) specifically states that "the court where the action is pending may order a party whose mental or physical condition – including blood group – is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. Rule 35(a)(2) states that the order:

> (A)        May be made only on motion for good cause and on notice to all parties and the person to be examined; and
> (B)        Must specify the time, place, manner, conditions, and scope of the examination, as well as the other person or persons who will perform it.

In accordance with the authority granted to the Court by Fed.R.Civ.P. 35, Defendant respectfully requests the Court enter an Order requiring Plaintiff to appear for a medical examination concerning Plaintiff's alleged injuries and pain and suffering following the June 7, 2014 incident.

Prior to bringing this dispute before the Court, counsel for Defendant served counsel for Plaintiff with a Notice of Independent Medical Examination. The Notice of

Independent Medical Examination requested Plaintiff attend a physical examination with Dr. Gregory Zeiders, D.O., in Oklahoma City, Oklahoma on April 21, 2022.  This notice was provided over a month in advance of the appointment. Upon receipt of that Notice, counsel for Plaintiff objected to the Notice because it did not "provide Plaintiff with enough specificity to determine what if any objections should be made to the conditions the doctor alleges he will be examining, the manner in which the examination will occur and the scope of the examination."  Plaintiff's initial objection to the Notice of Independent Medical Examination did not object to appearing for an IME or the licensed medical examiner selected by Defendant.  Moreover, Plaintiff has never objected to appearing for an IME or the licensed medical examiner selected by Defendant.  Plaintiff's true objection to the requested IME appears to be to the scope of the IME itself.  These are issues that go to the weight of the evidence and Plaintiff is impermissibly attempting to limit Defendant's presentation of evidence. Therefore, Defendant requests the Court enter an Order requiring Plaintiff to submit to a medical examination with Dr. Gregory Zeiders, D.O.

Because of this delay and dispute, Defendant has cancelled the noticed date for the IME and rescheduled it for May 16, 2021. An Amended Notice of IME has been served on Plaintiff (*See* Amended Notice of Independent Medical Examination attached as Exhibit "5"). This is intended to allow for resolution of the dispute that is the subject of this Motion. It originally appeared to Defendant, based on correspondence and a telephone call with Plaintiff's counsel, that Plaintiff's complaint was that Plaintiff had not been provided with what specific steps the licensed medical professional was going to take during the examination of Plaintiff.  Without any legal support for her stated position, Plaintiff alleged

that a detailed listing of steps must be provided before any medical examination takes place.  In reality, the detailed listing of steps cannot be provided in advance of the medical examination, but counsel for Defendant has since provided counsel for Plaintiff with details about the expected scope of the examination and the manner in which it will likely be conducted.  These are generally the same standard areas of examination for all orthopedic providers of medical service.

Plaintiff's new objections suggest that Defendant is only entitled to develop evidence related to Plaintiff's current physical condition and her future prognosis.  Defendant contends that Plaintiff's objection is not well-grounded in fact or law and is for the purpose of delaying Defendant's access to relevant information.  This is demonstrated by Plaintiff's "whack-a-mole" approach in raising, at different times, various objections to Defendant's request for Plaintiff to appear for an independent medical examination.    Ultimately, it appears that Plaintiff's arguments for a limited scope for the medical examination of Plaintiff are more suited for a Motion in *Limine* or for closing argument to the jury about the weight of evidence.

In accordance with the requirements of LCvR 37.1, counsel for Defendant has conferred with counsel for Plaintiff about Plaintiff's objections to the Notice of Independent Medical Examination previously served by Defendant. In fact, counsel for both parties have spoken about this dispute on more than one occasion.  However, a compromise was unable to be reached by the parties.  Thus, Defendant now files this Motion for Medical Examination for the Court's consideration and ruling:

## FACTUAL BACKGROUND

1. On March 7, 2022, counsel for Defendant served counsel for Plaintiff with a Notice of Independent Medical Examination for Plaintiff.  The Notice requested Plaintiff to attend an Independent Medical Examination on April 21, 2022 at 10:00 a.m. at the office of Zeiders Orthopedics in Oklahoma City, Oklahoma.  (*See* Notice of Independent Medical Examination attached as Exhibit "6").

2. On March 10, 2022, counsel for Plaintiff sent correspondence to counsel for Plaintiff claiming that the Notice of Independent Medical Examination was deficient because it was generic as to the conditions to be examined and the scope and manner in which the examination would be conducted.  (*See* March 10, 2022 correspondence from counsel for Plaintiff to counsel for Defendant attached as Exhibit "7").

3. Counsel for Defendant responded to the March 10, 2022 correspondence on March 14, 2022 and addressed to Plaintiff's perceived issues with the Notice of Independent Medical Examination.  Counsel for Defendant also requested counsel for Plaintiff to provide the case law authority Plaintiff relied on to support her objections to the Notice of Independent Medical Examination.  (*See* March 14, 2022 correspondence from counsel for Defendant to counsel for Plaintiff attached as Exhibit "8").

4. On March 15, 2022, counsel for Plaintiff responded to the March 14, 2022 correspondence and raised a new objection to the Notice that was not originally included in Plaintiff's objection. The March 15, 2022 correspondence from counsel for Plaintiff ignored the issues raised in counsel for Defendant's March 14, 2022

correspondence regarding the medical examination of Plaintiff.  (*See* March 15, 2022 correspondence from counsel for Plaintiff to counsel for Defendant attached as Exhibit "9").

5.  On March 17, 2022, counsel for Defendant requested that counsel for Plaintiff provide availability for a meet and confer regarding the independent medical examination of Plaintiff.  (*See* e-mail from counsel for Defendant to counsel for Plaintiff attached as Exhibit "10").

6.  Four (4) days later, on March 21, 2022, counsel for Plaintiff responded and provided availability on March 22 and 23, 2022 for a meet and confer over the medical examination dispute.  (*See* e-mail from counsel for Plaintiff to counsel for Defendant attached as Exhibit "11").

7.  On March 22, 2022, counsel for both parties discussed the matter by telephone. During that discussion, counsel for Plaintiff indicated that there was case law authority that Plaintiff was relying on to support her objections to Defendant's Notice of Independent Medical Examination.  Specifically, Plaintiff apparently relies on this particular case law authority for the notion that the scope of a medical examination could be specifically outlined in detail prior to a medical examination commencing.  So that every attempt at compromise could be fully exhausted prior to bringing this dispute to the Court, counsel for Defendant requested counsel for Plaintiff to provide the authority for review and further discussion before filing any necessary motion with the Court.

8. Shortly after the March 22, 2022 meet and confer, counsel for Plaintiff provided the citation of the case law authority that Plaintiff relief on to support her objection to the Notice of Independent Medical Examination. The citation of the case law authority is *St. Clair v. Hatch*, 2002 OK 101, 62 P.3d 382. The e-mail from counsel for Plaintiff indicated that "Plaintiff maintains that the conditions to be examined, the scope of the examination and the manner must be included in the Notice." Counsel for Plaintiff further alleged that it was "impossible for Plaintiff to determine her objections until Defendant includes these in the Notice." (*See* March 22, 2022 e-mail from counsel for Plaintiff to counsel for Defendant attached as Exhibit "12.")

9. Counsel for Defendant responded to Plaintiff's counsel's e-mail on March 23, 2022 and provided the requested details about the medical examination of Plaintiff. The March 23, 2022 correspondence from counsel for Defendant requested Plaintiff to please advise if she was maintaining her previous objections to the requested medical examination. The correspondence further requested that counsel for Plaintiff contact counsel for Defendant if Plaintiff was maintaining her objections so that the necessary meet and confer conference could be completed. (*See* March 23, 2022 correspondence from counsel for Defendant to counsel for Plaintiff attached as Exhibit "13").

10. After sending the March 23, 2022 correspondence, Defendant received no response to this correspondence for one (1) week. Finally, after reaching out to counsel for Plaintiff by telephone to attempt to resolve this ongoing dispute, counsel for Plaintiff provided a written response and objection to Plaintiff attending a physical

examination based on the expected scope and details of the requested medical examination. Among other things, Plaintiff's objection adopts such positions as:

    a.  A history of Plaintiff's physical complaints related to the underlying incident is unnecessary and not calculated to lead to relevant evidence.

    b.  Furthermore, Plaintiff believes "that the appropriate IME under the statute would be for [Dr. Zeiders] to do a current examination to testify regarding the current condition of her shoulder and allow him to testify as to her future.

(*See* correspondence from counsel for Plaintiff to counsel for Defendant attached as Exhibit "14").

## ARGUMENT AND AUTHORITY

The United States District Court for the Northern District of Oklahoma previously held that:

> Rule 35 provides that "[t]he court where the action is pending may order a party whose mental or physical condition…is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Generally, IMEs are performed by agreement of the parties, but the Court will order an IME where the party seeking the exam can show that "the mental or physical condition of the party who is to be examined is in controversy and that there is good cause for the examination. (***internal citations omitted)***.

*Morrison v. Chartis Prop. Cas. Co*., 2014 U.S. Dist. LEXIS 44336. Defendant was provided with medical records that show one of Plaintiff's treating physicians hold an opinion that a pre-existing medical condition related to Plaintiff's cervical spine was a potential generator of pain in Plaintiff's left shoulder. Considering Plaintiff's pre-existing medical conditions and claims of injury, pain and suffering in this litigation, Defendant

requests the Court enter an Order that requires Plaintiff to attend a physical examination so that she may be further evaluated as to her claims of personal injury following this incident, the impact that pre-existing medical conditions had on Plaintiff's claims of pain and suffering and whether all of Plaintiff's claimed pain and suffering was attributable to the underlying incident.

Counsel for Plaintiff and Defendant have previously discussed Plaintiff undergoing a medical examination as part of the discovery process in this litigation.  Based on those discussions, it was originally Defendant's understanding that Plaintiff did not have an objection to appearing for the requested medical examination, so long as Plaintiff is provided with a detailed description of all steps to be taken by the examining medical professional in advance of the examination so Plaintiff can determine whether Plaintiff needs to file an objection before the examination itself.  Based on discussions with counsel for Plaintiff, it was Defendant's understanding that Plaintiff was relying on an Oklahoma Supreme Court case *St. Clair v. Hatch*, 2002 OK 101, 62 P.3d 382 (Okla. 2002) in support of her claim that the specific steps that were to be taken in a medical examination should be specifically set forth before any medical examination took place.  However, that case law does not provide support for Plaintiff's position with regard to this dispute because *St. Clair v. Hatch* is easily distinguishable from the current dispute.

In *St. Clair*, the Plaintiff was requested to appear for a ***second*** cystoscopic examination in the same case.  The cystoscopic examination included inserting a thin flexible tube with lights and a camera into the Plaintiff to examine various structures in the Plaintiff's urinary tract.  The examination was also going to include a urodynamic study

and a urethral pressure study, which involved introducing fluid to see how the structures in the urinary tract handled fluid.  The litigation in *St. Clair* arose due to allege medical malpractice related to the ***first*** cystoscopic examination performed on Plaintiff.  The Plaintiff in *St. Clair* argued that the second examination was unsafe. That is a distinguishable situation from the case at bar.

It appears that Plaintiff had no intention of appearing for a medical examination even after Defendant supplied the requested specific details about the scope and performance of the requested medical examination.  Instead, it appears Plaintiff is attempting to limit any medical examination to a review of medical records and radiographic images, an inspection of Plaintiff's current physical condition, and her future prognosis related to her left shoulder.  Ultimately, Plaintiff is trying to force Defendant to ignore Plaintiff's pre-existing medical conditions related to her cervical spine which according to one of her treating physicians caused her to previously experience pain in her left shoulder.  Plaintiff's limited scope of any medical examination of Plaintiff runs afoul of the intent of the Federal Rules of Civil Procedure and applicable evidentiary rules.

In contrast to the *St. Clair* matter, Plaintiff does not allege that the requested examination of Plaintiff is unsafe or poses some risk to Plaintiff.  The examination procedure is also not the basis for this lawsuit. Based on previous correspondence from counsel for Plaintiff, it originally appeared that Plaintiff's complaint with the requested examination was that Defendant has not provided Plaintiff with a detailed listing of all steps that the licensed medical professional will take during the examination.  However, Defendant cannot provide a detailed listing of all steps to be taken by the licensed medical

professional because the scope of the examination will be dependent on what the medical history and complaints provided to the medical professional by Plaintiff.  Even though Defendant could not provide a specific, detailed breakdown of every action to be taken by Dr. Zeiders during a medical examination of Plaintiff, Defendant did provide Plaintiff with the general – and expected- process of the requested medical examination.  Defendant confirmed that the requested medical examination was a standard medical examination conducted by physicians on a routine basis.  For instance, Plaintiff previously appeared for an office visit on April 24, 2018 at Northwest Oklahoma Orthopaedic Clinic following the underlying incident where she was subjected to a similar examination/evaluation.  (*See* Exhibit "4").   Furthermore, Plaintiff also underwent another similar examination/evaluation at Newman Physicians Group, Inc. on October 30, 2018.  (*See* October 30, 2018 record from Newman Physicians Groups, Inc. attached as Exhibit "15").  These are the standard categories for an examination by a physician identified in every medical chart.

Unlike *St. Clair*, Defendant is not requesting Plaintiff submit to some sort of procedure that would involve an invasive procedure.  If that were the case, Defendant may be able to provide Plaintiff with a detailed listing of all steps to be taken by the examiner.  Here, because the impact of pre-existing medical conditions on Plaintiff's alleged pain and suffering is at issue, the examination requested by Defendant cannot be specifically broken down in advance of the examination except to the extent that has already been provided to Plaintiff's counsel.   Defendant is merely requesting that Plaintiff under a similar examination that she has went through with her own providers time and time again after

Case 5:21-cv-01047-J   Document 15   Filed 04/01/22   Page 14 of 15

her alleged incident.  No claim of medical privilege can exist for the information requested by Defendant because that type of information has already been disclosed by Plaintiff to Defendant as part of the original litigation in this case.

As part of any Order that Defendant is requesting from this Court, Defendant requests that the Order include requirements that Plaintiff appear for a medical examination with Dr. Gregory Zeiders at the office of Zeiders Orthopedics, 3414 NW 135th St. in Oklahoma City, Oklahoma on May 16, 2022.  Furthermore, Defendant requests that the Order allow for Dr. Zeiders to conduct a physical examination of Plaintiff, ask questions related to her medical history, review radiology films obtained of Plaintiff after the June 7, 2014 incident and obtain any new radiology films as necessary.  Defendant further requests that the scope of the examination of Plaintiff by Dr. Zeiders include any generators of pain to Plaintiff's left shoulder and any other physical complaint that Plaintiff had following the June 7, 2014 incident, including any pre-existing medical condition that related to any physical complaint that Plaintiff claimed after the underlying incident on June 7, 2014.

WHEREFORE, for good cause shown, Defendant respectfully requests that Court enter an Order for Plaintiff appear for a medical examination with Dr. Gregory Zeiders at the office of Zeiders Orthopedics, 3414 NW 135th St. in Oklahoma City, Oklahoma on May 16, 2022. Defendant further requests that the Order allow for Dr. Zeiders to conduct a physical examination of Plaintiff, ask questions related to her medical history, review radiology films obtained of Plaintiff after the June 7, 2014 incident and obtain new radiology films as necessary.  Additionally, Defendant requests that the Order allow that any examination of Plaintiff by Dr. Zeiders include any generators of pain to Plaintiff's left

shoulder and any other physical complaints that Plaintiff had following the June 7, 2014 incident, including any pre-existing medical condition that related to any physical complaint that Plaintiff claimed after the underlying incident on June 7, 2014.  In addition to the above, Defendant further requests any other relief that the Court deems just and equitable.

Respectfully submitted,


/s/Michael W. Brewer
**MICHAEL W. BREWER, OBA # 11769**
**JEFFREY D. SCOTT, OBA # 32115**
**HILTGEN & BREWER, P.C.**
9505 North Kelley Avenue
Oklahoma City, OK 73131
Telephone: (405) 605-9000
Facsimile: (405) 605-9010
**ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

**MARK STANLEY, OBA #11528**
7170 S. Braden Ave., Suite 170
Tulsa, OK 74136
Office: 918-584-2450
Facsimile: 918-584-2430
**ATTORNEY FOR PLAINTIFF**


/s/Michael W. Brewer
**MICHAEL W. BREWER**